**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TALYA WASHINGTON,<br>Plaintiff,<br>v.<br>AMAZON.COM SERVICES LLC,<br>Defendant. | Civil Action No. 25-15385 (GC) (JTQ)<br>**OPINION** |
| CARTER RADOVIC,<br>Plaintiff,<br>v.<br>AMAZON.COM SERVICES LLC,<br>Defendant. | Civil Action No. 25-15396 (GC) (TJB)<br>**OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Defendant Amazon.com Services LLC's Motion to Dismiss Plaintiff Talya Washington's Complaint (ECF No. 1-1) under Federal Rule of Civil Procedure (Rule) 12(b)(6). (ECF No. 12.)[1] Plaintiff opposed, and Defendant replied. (ECF

[1] Plaintiff Carter Radovic filed a nearly identical Complaint, and Defendant Amazon.com Services LLC filed a nearly identical Motion to Dismiss. *See* Complaint, *Radovic v. Amazon.com Services LLC*, Civ. No. 25-15396 (D.N.J. Sep. 9, 2025), Dkt. No. 1-1; Motion to Dismiss, *Radovic* (D.N.J. Nov. 11, 2025), Dkt. No. 12. The only difference between the Complaints appears to be that Washington and Radovic worked at different facilities in New Jersey. Because this difference is not dispositive on the Motions before the Court, the Court addresses the two matters jointly, with docket entries (*i.e.* "ECF Nos.") referring to those in *Washinton v. Amazon.com Services LLC*, Civ. No. 25-15385 (D.N.J. Sep. 9, 2025).

Nos. 29, 33.) The Court has carefully reviewed the parties' submissions and decides the matter and decides the matter following oral argument on July 30, 2026 (ECF No. 38). For the reasons set forth below, and other good cause shown, Defendant's Motion is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

### A. Factual Background[2]

Plaintiff worked for Defendant as an hourly employee from approximately January 2022 to April 2024. (ECF No. 1-1 ¶ 28.) During her employment, Plaintiff worked at Defendant's TEB9 and LGA9 facilities in New Jersey, and Defendant contracted with Plaintiff to pay her "for all hours worked[.]" (*Id.* ¶¶ 4, 29, 45.) At the beginning of each workday, Plaintiff walked into Defendant's premises, underwent a security screening, and walked to a clock-in location. (*Id.* ¶¶ 34-35.) At the end of each workday, Plaintiff clocked out, walked from the clock-out location to the security screening location, underwent the security screening, and exited Defendant's premises. (*Id.*) Defendant compensated Plaintiff only for the time recorded in Defendant's time clock system. (*Id.* ¶ 36.) Therefore, Defendant did not compensate Plaintiff for the time she underwent the security screenings at the beginning and end of each day, nor did it compensate Plaintiff for the time she spent walking between the clock-in or clock-out locations and the security screening locations. (*Id.* ¶ 37.)

In the middle of each workday, Defendant required Plaintiff to take a 30-minute unpaid meal break. (*Id.* ¶ 39.) Defendant required Plaintiff to clock out at the beginning of the meal break and clock back in at the end of the meal break. (*Id.* ¶ 40.) To leave Defendant's premises during

---

[2] On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation modified).

a meal break, Defendant required Plaintiff to undergo the same security screening that Plaintiff underwent at the end of each workday. (*Id.* ¶ 41.) Plaintiff alleges that because of these mandatory security screenings, "the vastness of Defendant's parking lots," and "the remoteness of Defendant's facilities," Plaintiff could not leave Defendant's premises and "engage in [her] own pursuits" during these 30-minute meal breaks. (*Id.* ¶ 42.) Despite the inability to leave the premises, Plaintiff was not paid during these meal breaks. (*Id.* ¶ 43.)

**B. Procedural Background**

***1. This Action***

On May 29, 2025, Plaintiff filed a putative class action Complaint in the Superior Court of New Jersey, Somerset County. (*See generally id.*) Before Defendant was served, Defendant removed the matter to this Court on September 9, 2025. (ECF No. 1 at 3.)[3] Plaintiff brings claims for violations of the New Jersey Wage and Hour Law (NJWHL) (Count I) and the New Jersey Wage Payment Law (NJWPL) (Count II), as well as a claim for unjust enrichment under New Jersey common law (Count III). (ECF No. 1-1 at 10-12.)[4] Plaintiff seeks to bring these claims on behalf of other similarly situated employees. (*Id.* ¶¶ 7, 17.) In particular, Plaintiff seeks to represent two classes. (*Id.* ¶¶ 8, 18.) The first class (the NJWHL Class), which Plaintiff seeks to represent in connection with Count I, consists of:

> all individuals presently or formerly employed as hourly employees of Defendant at its TEB9 and/or LGA9 facilities who, during at least one workweek within the period from May 11, 2016 through the present, worked more than 40 hours when taking into account both the hours worked for which Defendant paid them and the unpaid time Defendant required her or him to be on Defendant's premises and not free to engage in their own pursuits, including but not

[3] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[4] The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

> limited to walking from the location at which he or she clocked out to the security screening area, waiting to undergo a security screening, undergoing a security screening, walking from the security screening area to the exit from Defendant's premises, walking from the entrance to Defendant's premises to the area at which he or she clocked in, waiting to clock in, and on an unpaid meal break[.]

(*Id.* ¶ 8.) The second class (the NJWPL Class), which Plaintiff seeks to represent in connection with both Counts II and III, consists of:

> all individuals presently or formerly employed as hourly employees by Defendant at its TEB9 and/or LGA9 facilities who, during at least one workweek within the period from six (6) years prior to the filing of the instant Complaint through the present, worked for Defendant and did not receive wages for all hours during which Defendant required her or him to be at their place of work, including but not limited to walking from the location at which he or she clocked out to the security screening area, waiting to undergo a security screening, undergoing a security screening, walking from the security screening area to the exit from Defendant's premises, walking from the entrance to Defendant's premises to the area at which he or she clocked in, [and] waiting to clock in[.]

(*Id.* ¶ 18.) Plaintiff seeks an order prohibiting Defendant from continuing its allegedly unlawful practices and requiring Defendant to compensate Plaintiff for owed wages. (*Id.* at 12.) Plaintiff also seeks liquidated damages, prejudgment interest, and attorney's fees. (*Id.*)

***2. The* Vaccaro *Action***

In 2018, several years before Plaintiff filed this action in 2025, a different named plaintiff filed a similar putative class action against an Amazon defendant seeking compensation for post-shift security screenings and for meal breaks. *See* First Amended Complaint, *Vaccaro v. Amazon.com.dedc, LLC*, Civ. No. 18-11852 (D.N.J. July 19, 2018), Dkt. No. 1-1. Unlike in the instant matter, the plaintiff in that case sought relief only under the NJWHL and sought to represent a broader class of warehouse employees in New Jersey rather than a narrower class of employees at the specific facilities at which the named plaintiff worked. *See id.* On June 29, 2020, the

Honorable Chief Judge Freda L. Wolfson, U.S.D.J., dismissed the meal break theory claim with prejudice but allowed the post-shift security screening claim to move forward. *Vaccaro v. Amazon.com.dedc, LLC (Vaccaro I),* Civ. No. 18-11852, 2020 WL 3496973, at *7 (D.N.J. June 29, 2020).

On October 30, 2024—following amendment to the complaint to add an additional named plaintiff, transfer to the undersigned, and discovery—this Court denied class certification without prejudice because, in part, "not all putative class members were subject to a uniform policy that required them to undergo mandatory post-shift security screenings without receiving overtime pay" given that the putative class members worked at a variety of Amazon facilities. *Vaccaro v. Amazon.com.dedc, LLC (Vaccaro II)*, Civ. No. 18-11852, 2024 WL 4615762, at *10 (D.N.J. Oct. 30, 2024), *reconsideration denied*, 2025 WL 974660 (D.N.J. Apr. 1, 2025). A renewed motion for class certification in *Vaccaro* is forthcoming. *See* Order, *Vaccaro* (D.N.J. Aug. 18, 2025), Dkt. No. 145.

Meanwhile, on May 29, 2025, Plaintiff filed the Complaint in the instant matter on behalf of employees who worked at her facilities. (ECF No. 1-1.) On November 11, 2025, Defendant filed a Motion to Dismiss, (ECF No. 12), the Court held oral argument on July 30, 2026, (ECF No. 38), and the Motion is now ripe for review.

## II. LEGAL STANDARD

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

## III. <u>DISCUSSION</u>

Defendant raises three arguments. First, Defendant argues Plaintiff's NJWPL and unjust enrichment claims (Count II and III) should be dismissed to the extent they seek recovery for the period prior to May 29, 2023 because the statute of limitations is two years with respect to those claims. (ECF No. 12-1 at 5, 11-12.) Second, Defendant contends the NJWHL claim (Count I) should be dismissed to the extent it seeks recovery for the period prior to May 29, 2019 because the statute of limitations is six years for this claim. (*Id.* at 5, 13-14.) Third, Defendant argues the NJWHL claim should be dismissed with respect to the meal break theory for failure to state a claim. (*Id.* at 6, 14-15.)

### A. Statute of Limitations

#### *1. NJWPL and Unjust Enrichment*

For the NJWPL claim, Plaintiff seeks to certify a class of individuals who "worked for Defendant and did not receive wages for all hours [worked]" within "the period [] six (6) years prior to the filing of the instant Complaint" on May 29, 2025. (ECF No. 1-1 ¶ 18.) Defendant argues the statute of limitations for these claims is two rather than six years, so any claims for

wages from prior to May 29, 2023 should be dismissed. (ECF No. 12-1 at 11-12.) The Court agrees with Plaintiff that the statute of limitations is six years, so dismissal is not warranted.

The NJWPL "governs the time and mode of payment of wages due to employees." *Hargrove v. Sleepy's, LLC*, 106 A.3d 449, 457 (N.J. 2015). It does not contain a statute of limitations provision. *See* N.J. Stat. Ann. §§ 34:11-4.1 *et seq*. "When the Legislature creates a statutory cause of action without including a limitations provision, a court will apply the general limitations provision which governs that category of claim." *Troise v. Extel Commc'ns, Inc.*, 784 A.2d 748, 751 (N.J. Super. Ct. App. Div. 2001), *aff'd mem.*, 808 A.2d 96 (N.J. 2002). When the "nature of the injuries identified with the plaintiffs' cause of action are more analogous to breach of contract than injury to the person," the cause of action "is subject to the six-year statute of limitations that is provided by N.J.[ Stat. Ann. §] 2A:14-1 for breach of contract claims for economic harm." *Meyers v. Heffernan*, Civ. No. 12-2434, 2014 WL 3343803, at *6 (D.N.J. July 8, 2014) (citing *Troise*, 784 A.2d at 751-52). By contrast, when the nature of the injuries is more analogous to injury of person, the cause of action is "subject to the two-year limitations period provided by N.J.[ Stat. Ann. §] 2A:14-2." *Id.* at *5.

To guide this statute of limitations analysis, a court "must attempt to predict how" the New Jersey Supreme Court would rule on the issue. *U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d 90, 93 (3d Cir. 1996). "In doing so, [courts] give due deference to the decisions of intermediate state courts." *In re Makowka*, 754 F.3d 143, 148 (3d Cir. 2014). But these decisions "are not controlling" and a court may also look to "what the [New Jersey] Supreme Court has said in related areas." *Id.* (quoting *Gruber v. Owens-Illinois. Inc.*, 889 F.2d 1366, 1369 (3d Cir. 1990)).

The dispute over whether two or six years is the appropriate statute of limitations for NJWPL claims stems from a recent decision by the New Jersey Supreme Court in *Maia v. IEW*

*Construction Group*, 313 A.3d 887 (N.J. 2024). There, the plaintiffs filed a class action complaint seeking compensation for pre- and post-shift labor under the NJWPL and NJWHL. *Maia*, 313 A.3d at 891. The Supreme Court examined whether certain claims were timely given amendments to both of these statutes on August 6, 2019. *Id.* As for the NJWHL, the Supreme Court noted that the statute previously contained a two-year statute of limitations provision, but the August 6, 2019 amendments increased the statute of limitations period to six years. *Id.* at 896. But the Court held the amendment was not retroactive, so if the conduct occurred before August 6, 2019, it would still be subject to a two-year statute of limitations. *Id.* at 900. However, as for the NJWPL—which never had a statute of limitations provision—the Supreme Court stated in a footnote that the amendment "does not include any language about the limitations period[.]" *Id.* at 897 n.3. The Appellate Division "concluded from a statement in the legislative history of [the August 6, 2019 amendments] that the six-year limitations period explicitly added to the [NJ]WHL was intended to apply to the [NJ]WPL despite the amendments' silence on that point." *Id.* The Supreme Court disagreed, concluding that "[t]he explicit establishment of a six-year limitations period for the [NJ]WHL has no bearing on the limitations period for the [NJ]WPL." *Id.* (citing *State v. Ryan*, 268 A.3d 311, 321 (N.J. 2022)); *see also Ryan*, 268 A.3d at 321 ("It is the Legislature's prerogative to impose a requirement in one context but not another; it is our duty to treat that distinction as meaningful.").

Following *Maia*, courts have come out differently on whether NJWPL claims are governed by a two- or six-year statute of limitations. In *Bosco v. Compass Group USA, Inc.*, the court dismissed the NJWPL claims when the plaintiffs "seemingly concede[d] that the NJWPL is governed by a two-year statute of limitations" because, in *Maia*, "the New Jersey Supreme Court expressly stated the six-year statute of limitations for NJWHL claims did not apply to the NJWPL."

Civ. No. 22-6909, 2025 WL 1742657, at *5 (D.N.J. June 23, 2025) (citing *Maia*, 313 A.3d at 897 n.3), *reconsideration denied*, 2026 WL 800530 (D.N.J. Mar. 23, 2026). By contrast, in *Guimaraes v. Metal Transport, LLC*, the court allowed the plaintiffs' NJWPL claims to proceed because it "predict[ed] that the Supreme Court of New Jersey would apply the six-year limitations period" if it were to apply the *Troise* category-of-harm analysis. 790 F. Supp. 3d 389, 402 (M.D. Pa. 2025). And in *Cruz v. Aspen Landscaping Contracting, Inc.*, the Appellate Division ruled similarly. *See* Dkt. No. A-2157-22, 2024 WL 5230483, at *7 (N.J. Super. Ct. App. Div. Dec. 27, 2024) ("The reasoning supporting our conclusion in *Troise* applies with syllogistic precision here. We therefore conclude private causes of action under the [NJ]WPL are subject to the six-year statute of limitations in N.J.[ Stat. Ann. §] 2A:14-1.").

The Court predicts that the New Jersey Supreme Court would hold that NJWPL claims are governed by a six-year statute of limitations based on a *Troise* category-of-harm analysis. The Court reads the New Jersey Supreme Court's footnote in *Maia* to mean that it would be improper to automatically graft the statutory six-year requirement of the NJWHL onto the NJWPL, but it does not forgo the Court's requirement to conduct a *Troise* analysis. *See Maia,* 313 A.3d at 897 n.3.[5] And under that analysis, the Court must evaluate whether the "nature of the injuries identified with the plaintiffs' cause of action are more analogous to breach of contract than injury to the person[.]" *Meyers*, 2014 WL 3343803, at *6 (citing *Troise*, 784 A.2d at 751-52).

Defendant fails to brief such an analysis and instead rests its argument on an interpretation of the *Maia* footnote that this Court has rejected. (*See* ECF No. 12-1 at 11-12; ECF No. 33 at 7-

[5] Unlike in *Bosco v. Compass Group USA*, which did not conduct a *Troise* analysis, Plaintiff does not "seemingly concede" the statute of limitations issue. Civ. No. 22-6909, 2025 WL 1742657, at *5 (D.N.J. June 23, 2025); *see also Guimaraes v. Metal Transp., LLC*, 790 F. Supp. 3d 389, 402 n.9 (M.D. Pa. 2025) (distinguishing *Bosco*).

8.) Instead, the Court finds persuasive the chorus of cases before and after *Maia* that have found the NJWPL is governed by a six-year statute of limitations upon an application of *Troise*. *See Guimaraes*, 790 F. Supp. 3d at 402 (predicting "that the Supreme Court of New Jersey would apply the six-year limitations period from Section 2A:14-1 to NJWPL claims" because "NJWPL claims are comparable to claims for breach of contract"); *Cruz*, 2024 WL 5230483, at *7 (concluding "private causes of action under the [NJ]WPL are subject to the six-year statute of limitations in N.J.[ Stat. Ann. §] 2A:14-1" because they are "comparable to claims for breach of contract" (citation modified)); *Derieux v. FedEx Ground Package Sys., Inc.*, Civ. No. 21-13645, 2023 WL 349495, at *3 (D.N.J. Jan. 20, 2023) ("Plaintiff's claim under the NJWPL . . . supports the expansion of the class period to six years."); *Meyers*, 2014 WL 3343803, at *8 ("[T]he [c]ourt finds that a private cause of action under the [NJ]WPL is subject to the six-year statute of limitations provided by N.J.[ Stat. Ann. §] 2A:14–1 for claims for breach of contract and other economic harm[.]"); *Meyers v. Heffernan*, 740 F. Supp. 2d 637, 645 (D. Del. 2010) (holding "the six-year statute of limitations of N.J.[ Stat. Ann. §] 2A:14-1 applies to plaintiffs' claims under the [NJ]WPL" because "the nature of the injury sought to be redressed by the claims are economic and not conduct that injures the personhood of the plaintiffs." (citation modified)). Accordingly, Plaintiff's NJWPL claims—premised on "the period [] six (6) years prior to the filing of the instant Complaint," (ECF No. 1-1. ¶ 18)—shall not be denied on statute of limitations grounds.[6]

[6] Defendant argues "a two-year statute of limitations also applies to [Plaintiff's] duplicative claim for unjust enrichment." (ECF No. 12-1 at 12.) However, "[t]he statute of limitations for an unjust enrichment claim in New Jersey is six years." *Spellman v. Express Dynamics, LLC*, 150 F. Supp. 3d 378, 391 (D.N.J. 2015) (citing *Kopin v. Orange Prods*, 688 A.2d 130, 140-41 (N.J. Super. Ct. App. Div. 1997) (applying category-of-harm analysis)).

### *2. NJWHL*

For the NJWHL claim, Plaintiff seeks to certify a class of individuals "who, during at least one workweek within the period from May 11, 2016 through the present, worked more than 40 hours[.]" (ECF No. 1-1 ¶ 8.) Defendant argues that "because a six-year statute of limitations applies to the NJWHL Class, any claims prior to May 29, 2019, are . . . untimely and should be dismissed." (ECF No. 12-1 at 12.) And Defendant contends that this Court's decision in *Vaccaro II*, denying class certification in a similar Amazon case, does not toll the statute of limitations period under federal tolling principles. (*Id.* at 13-14.) Plaintiff responds that New Jersey—not federal—tolling rules apply, and under those rules, *Vaccaro II* tolled the limitations period. (ECF No. 29 at 14-17.) But even if federal tolling applied, Plaintiff submits that its NJWHL claims would not be barred. (*Id.* at 17-22.)[7] The Court agrees with Defendant that *Vaccaro II* does not toll the statute of limitations on Plaintiff's class claims, so a portion of Plaintiff's claims are untimely and must be dismissed.

"[S]tate tolling principles are generally to be used by a federal court when it is applying a state limitations period." *Sheet Metal Workers, Loc. 19 v. 2300 Grp., Inc.*, 949 F.2d 1274, 1279 (3d Cir. 1991) (quoting *Vernau v. Vic's Mkt., Inc.*, 896 F.2d 43, 45 (3d Cir.1990)). Thus, a court "must predict what the [New Jersey] Supreme Court would decide." *Id.* While the New Jersey Supreme Court has not opined on the tolling effect of class actions on subsequent *class* claims—as is the case here given that this matter (a putative class action) was filed after *Vaccaro II* (a class

---

[7] Plaintiff also argues that whether tolling applies to the NJWHL claims from May 11, 2016 through May 29, 2019 is a question governed by Rule 23 rather than Rule 12 and therefore is premature. (ECF No. 29 at 12-14.) However, courts routinely decide class tolling issues at the motion to dismiss stage. *See China Agritech, Inc. v. Resh*, 584 U.S. 732, 738, 748 (2018) (reversing the Ninth Circuit's reversal of the district court's dismissal under Rule 12(b)(6)); *Blake v. JPMorgan Chase Bank, N.A.*, 927 F.3d 701, 703 (3d Cir. 2019) (affirming dismissal under Rule 12(b)(6)).

certification decision)—the Appellate Division has ruled on the tolling effect of class actions on subsequent *individual* claims. In doing so, the Appellate Division adopted the federal standard for the tolling effect of a class action on subsequent individual claims set forth by the United States Supreme Court in *American Pipe Construction Company v. Utah*, 414 U.S. 538 (1974). *See Staub v. Eastman Kodak Co.*, 726 A.2d 955, 961, 966-67 (N.J. Super. Ct. App. Div. 1999) (citing *Am. Pipe,* 414 U.S. at 552-53 (1974)).[8]

*American Pipe* held "that the timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint." *China Agritech v. Resh*, 584 U.S. 732, 735 (2018) (citing *Am. Pipe*, 414 U.S. at 544, 552-53). In other words, "[w]here class-action status has been denied . . . members of the failed class could timely intervene as individual plaintiffs in the still-pending action, shorn of its class character." *Id.* (citing *Am. Pipe*, 414 U.S. at 544, 552-53). In 1983, the United States Supreme Court thereafter "clarified *American Pipe*'s tolling rule: The rule is not dependent on intervening in or joining an existing suit; it applies as well to putative class members who, after denial of class certification, 'prefer to bring an individual suit rather than intervene once the economies of a class action are no longer available.'" *Id.* (alterations adopted) (quoting *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350, 353-54 (1983)). In other words, under *American Pipe*, tolling applies not only to putative class members who seek to intervene in the suit in which class action was denied, but also to putative class members who seek to file new individual claims after class certification was denied.

---

[8] The parties agree that the Appellate Division adopted the *American Pipe* standard. (*See* ECF No. 29 at 15 (Plaintiff stating "New Jersey adopted *American Pipe* tolling as a matter of state substantive law . . . ."); ECF No. 33 at 11 (Defendant stating that "federal and New Jersey tolling rules . . . have been in lockstep").

More recently, in *China Agritech*, the United States Supreme Court addressed whether a putative class member under *American Pipe* could, "[u]pon the denial of class certification, . . . commence a *class action* anew beyond the time allowed by the applicable statute of limitations[.]" *Id.* at 735-36 (emphasis added). The Court held the putative class member could not: "*American Pipe* tolls the statute of limitations during the pendency of a putative class action, allowing unnamed class members to join the action individually or file individual claims if the class fails. But *American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations." *Id.* at 736. The Court reasoned that "*American Pipe* tolls the limitation period for *individual* claims because economy of litigation favors delaying those claims until after a class-certification denial." *Id.* at 740 (emphasis added). If certification is granted, then there is no need to assert individual claims; but if certification is denied, then individuals should still be given an opportunity to pursue their claims. *Id.* By contrast, for successive *class* claims, if tolling were permitted, then the statute of limitations would "be extended time and again; as each class is denied certification, a new named plaintiff could file a class complaint that resuscitates the litigation." *Id.* at 743. Therefore, the Court concluded, because *American Pipe* is guided by "efficiency and economy of litigation . . . no tolling for out-of-time class actions" is permitted. *Id.* at 748.

The Third Circuit applied this holding in *Blake v. JP Morgan Chase Bank NA*, 927 F.3d 701 (3d Cir. 2019). There, the plaintiffs were putative members of a class in a case that was dismissed by a California district court in May 2013 and by the Ninth Circuit in November 2013. *Blake*, 927 F.3d at 704. While on appeal, the plaintiffs brought a new class action, this time as named plaintiffs, in a federal district court in Pennsylvania. *Id.* The plaintiffs argued their claims were tolled from December 2011, when the first complaint was filed in California, to November

2013, when the Ninth Circuit dismissed the appeal. *Id.* The Third Circuit held "the pendency of the . . . class action from 2011 to 2013 does not toll the time for filing a second class action" because "courts may not toll new class actions under *American Pipe*, period." *Id.* at 709-710.

Plaintiff argues "there is no indication that [New Jersey] has or would adopt *China Agritech*" and therefore *Staub* "controls the tolling of Plaintiff's state law class claims." (ECF No. 29 at 14.) However, Plaintiff has not presented the Court with a persuasive explanation for why *Staub*—which adopted *American Pipe*—would diverge from *American Pipe*'s progeny, and in fact, at least one Appellate Division decision has determined that, under *Staub*, tolling does not apply to successive class actions. In *Mungiello v. Federal Express Corporation*, the Appellate Division evaluated whether the plaintiffs' state law claims were barred by the applicable statute of limitations. No. A-4077-14T2, 2016 WL 6833070, at *2 (N.J. Super. Ct. App. Div. Nov. 21, 2016). The three plaintiffs opted into federal class actions in 2006 and 2007. *Id.* at *1. Afterwards, the federal district court denied class certification and dismissed the claims, including as to the three opt-in plaintiffs. *Id.* A nearly identical class action was filed in federal court in 2008, and the three plaintiffs were all named plaintiffs in that second class action litigation. *Id.* That second federal class action was dismissed with prejudice following a stipulation. *Id.* at *2. In 2012, the three plaintiffs filed a complaint in New Jersey state court. *Id.* The defendant argued the plaintiffs' state law claims were barred by the applicable statute of limitations, but the plaintiffs responded that their claims were tolled by their participation in the two federal class actions. *Id.* The Appellate Division affirmed summary judgment on statute of limitations grounds. *Id.* at *4. As is relevant here, the court affirmed that a plaintiff's "participation in [the second class action] did not continue to toll [his state law] claims." *Id.* at *3 (citing *Yang v. Odom*, 392 F.3d 97, 105 (3d Cir. 2004), *abrogated on other grounds by China Agritech,* 584 U.S. at 744 n.5). And it held that the trial

court "properly applied the tolling rules established in *American Pipe, Crown, Cork & Seal*, and *Staub*." *Id.* at *4. In other words, the Appellate Division, albeit in an unpublished decision, affirmed that *Staub*—like *American Pipe*—did not extend to subsequent class actions.

Therefore, whether analyzed under federal or New Jersey tolling principles, the outcome is the same: tolling does not apply to subsequent class actions. *See China Agritech*, 584 U.S. at 736; *Blake*, 927 F.3d at 709-710; *Mungiello*, 2016 WL 6833070, at *3-4. Accordingly, *Vaccaro II* did not toll the statute of limitations for the class claims beyond the six-year limitations period.[9]

Plaintiff brings one final rejoinder. She argues that *China Agritech* and *Blake* are distinguishable because of "the nature of the prior certification ruling." (ECF No. 29 at 18.) In *Vaccaro II*, unlike those cases, this Court denied certification without prejudice, "expressly indicating that certification on a facility-by-facility basis might be appropriate." (*Id.* (citing *Vaccaro II*, 2024 WL 4615762, at *10).) Plaintiff argues the concurrence in *China Agritech* supports tolling in such a circumstance, which proposed that "tolling only becomes unavailable for future class claims where class certification is denied for a reason that bears on the suitability of the claims for class treatment," whereas tolling should remain available when "class certification is denied because of the deficiencies of the lead plaintiff as class representative, or because of some other nonsubstantive defect." 584 U.S. at 753 (Sotomayor, J., concurring). Even if this Court's decision in *Vaccaro II* were construed as denying class certification due to a "nonsubstantive defect," the Third Circuit has acknowledged that the Supreme Court "expressly rejected th[e] distinction" drawn in Justice Sotomayor's concurrence. *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 610 (3d Cir. 2018) (quoting *China Agritech*, 584 U.S. at 755 n.5).

---

[9] Because Plaintiff began working for Defendant in 2022, (ECF No. 1-1 ¶ 28), the Court need not evaluate whether *Vaccaro II* tolled her *individual* claims because, in any event, they were filed within the six-year statute of limitations period.

Therefore, the NJWHL class claims were not tolled by *Vaccaro II*. Because the NJWHL has a six-year statute of limitations, class claims prior to May 29, 2019—six years before the Complaint was filed—must be dismissed. And class claims from May 29, 2019 and prior to August 6, 2019 must likewise be dismissed because, as the Court discussed *supra*, the August 6, 2019 amendment increasing the statute of limitations period to six years was not retroactive. *Maia*, 313 A.3d at 896, 900. Accordingly, the only NJWHL class claims that shall proceed are those from August 6, 2019 onwards.

**B. Failure to State a Claim**

Defendant argues that Plaintiff fails to state a claim for a violation of the NJWHL in connection with Plaintiff's meal break theory. (ECF No. 12-1 at 14.) Defendant contends the allegations are indistinguishable from those rejected by Judge Wolfson in *Vaccaro I*, so this Court should likewise dismiss them. (*Id.* at 14-15.) Plaintiff does not contest the similarities between the meal break allegations in this matter and those in *Vaccaro I* but instead argues that *Vaccaro I* was wrongly decided. (ECF No. 29 at 22-32.) For the reasons described below, the Court will dismiss the meal break NJWHL claims without prejudice.

In *Vaccaro I*, the plaintiff brought a putative class action on behalf of current and former employees of Amazon and sought compensation under the NJWHL for time spent undergoing post-shift security screenings and on meal breaks. 2020 WL 3496973, at *1. While the court held that "the time spent undergoing mandatory post-shift security screenings is compensable under the NJWHL," it also held that "time spent on meal breaks during the course of the workday is not compensable." *Id.*

As for meal breaks, just as in the instant matter, the plaintiff alleged the defendant required her to take a 30-minute unpaid meal break during which the defendant required the plaintiff to "clock out" at the beginning of each meal break and "clock in" at the end of each meal break. *Id.*

And, just as in the instant matter, the plaintiff was required to undergo a security screening before leaving Amazon's premises for the meal break, but "due to these mandatory security screenings, the vastness of Amazon's parking lots, and the remoteness of Amazon's facilities," the plaintiff was "unable to leave her 'plac[e] of work' or 'engage in her own pursuits' during [those] meal" breaks. *Id.* (first alteration in original).

To evaluate whether meal breaks were compensable, the court applied the "predominant benefit test" from the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq*., to the NJWHL context. To justify why such an application was appropriate, the court began with the text of the NJWHL regulations. *See Vaccaro I*, 2020 WL 3496973, at *3.[10] The regulation concerning "[c]omputation" states that "[a]ll the time the employee is required to be at his or her place of work or on duty shall be counted as hours worked." N.J. Admin. Code § 12:56-5.2(a). The court noted that the regulations do not define "place of work," and the New Jersey Supreme Court has not defined the phrase. *Vaccaro I*, 2020 WL 3496973, at *3. Thus, Judge Wolfson stated it was *Vaccaro I*'s task to "predict how the New Jersey Supreme Court would interpret that phrase." *Id.* at *3. The court looked to interpretations of the FLSA for guidance because both state and federal courts in New Jersey have found the NJWHL was "patterned" on the FLSA. *Id.* (collecting cases). And "when state statutes and regulations are 'patterned' on federal statutes and regulations, 'a court may look to the analogous federal statute and regulations thereunder for guidance.'" *Id.* (quoting *GATX Terminals Corp. v. N.J. Dep't of Env't Prot.*, 429 A.2d 355, 349 (N.J. 1981); *see also id.* ("[W]hen 'there is no state decisional law . . . parallel federal case law is an appropriate

[10] "Although not bound by an agency's determination on a question of law, our courts give great deference to an agency's interpretation of statutes within its scope of authority and its adoption of rules implementing the laws for which it is responsible." *Hargrove v. Sleepy's, LLC*, 106 A.3d 449, 456 (N.J. 2015) (citation modified).

reference source.'" (quoting *Interchange State Bank v. Veglia*, 668 A.2d 465, 472 (N.J. Super. Ct. App. Div. 1995)).

The court reasoned that under the FLSA, the United States Supreme Court defined "work" as "any activity '*controlled or required by the employer* and pursued necessarily and *primarily for the benefit of the employer* and his business.'" *Id.* at *4 (emphasis added) (quoting *Tenn. Coal, Iron & R. Co. v. Muscoda Loc. No. 123*, 321 U.S. 590, 598 (1944)). Therefore, Judge Wolfson explained, "referring to the FLSA's definition of 'work' for guidance, the phrase 'place of work' in N.J.[ Admin. Code] § 12:56-5.2(a) can fairly be read as any place where the following two prongs are met: (1) an activity is performed that is *controlled or required* by the employer; and (2) such activity serves to *primarily benefit* the employer." *Id.* (emphasis in original).

While these prongs were satisfied with respect to mandatory security screenings at the end of the work-day, the court found they were not with respect to the meal breaks because "the act of undergoing a security check during the course of the workday [(1)] is a consequence of an employee's choice to take his or her meal break outside of Amazon's premises and [(2)] serves primarily to benefit the employee." *Id.* at *6 (emphasis omitted). Accordingly, the court held that the time the plaintiff spent on her meal breaks was "not time spent at [] her 'place of work.'" *Id.* (first citing *Babcock v. Butler County*, 806 F.3d 153, 158 (3d Cir. 2015)[11]; then citing N.J. Admin. Code § 12:56-5.2(a)).

---

[11] In *Babcock v. Butler County*, the plaintiffs brought a putative class action, and the Third Circuit addressed whether meal breaks were compensable under the FLSA. *See* 806 F.3d 153, 155 (3d Cir. 2015). During their one-hour lunch breaks, the corrections officer plaintiffs were not allowed to leave the prison without permission and were required to remain in uniform, in close proximity to emergency response equipment, and on call to respond to emergencies. *Id.* As a result, the plaintiffs could not "run personal errands, sleep, breathe fresh air, or smoke cigarettes during mealtime[.]" *Id.* The plaintiffs were only compensated for forty-five minutes of their lunch hour, so they brought suit to receive compensation for the remaining fifteen minutes. *Id.* The Third Circuit adopted the "predominant benefit test" to evaluate the FLSA claim. *Id.* at 156. Under

Plaintiff argues *Vaccaro I* was wrongly decided for several reasons. First, Plaintiff argues that while the NJWHL is modeled after the FLSA, the former "typically provides broader protections to workers than federal law." (ECF No. 29 at 24.) Second, the NJWHL regulations—which *Vaccaro I* did not consider or inappropriately equated to FLSA regulations—support compensation for meal breaks. (*Id.* at 24-31.) Third, even if the Court adopts the predominant benefit test, discovery may reveal that Amazon imposes a 30-minute meal break predominantly for its own benefit. (*Id.* at 31-32.) Defendant responds that the FLSA and NJWHL should be analyzed in lockstep as to meal breaks, that Plaintiff misreads the regulations, and that dismissal is appropriate under the predominant benefit test. (ECF No. 33 at 12-16.)

The Court agrees with the approach adopted by Judge Wolfson that employs the predominate benefit test. The regulations governing "Hours Worked" can be found at N.J. Admin. Code §§ 12:56-5.1 to 12:56-5.8. Under these regulations, employees "shall be paid for all hours worked." N.J. Admin. Code § 12:56-5.1. To "[c]omput[e]" the number of "hours worked," the employer must factor in "[a]ll the time the employee is required to be at his or her place of work or on duty." *Id.* § 12:56-5.2(a). However, an employer is not required to compensate an employee for "hours the employee is not required to be at his or her place work because of holidays, vacation, lunch hours, illness and similar reasons." *Id.* § 12:56-5.2(b).

The Court predicts the New Jersey Supreme Court would adopt such an approach for two reasons. First, the New Jersey Department of Labor, elsewhere in the "Hours Worked" regulation,

---

that test, the court examined whether the restrictions "predominantly benefit the employer." *Id.* at 157. If they did, then the time would be compensable. *See id.* The Third Circuit ruled the restrictions did not predominantly benefit the employer because, in part, plaintiffs "could request authorization to leave the prison for their meal period and could eat lunch away from their desks." *Id.*

contemplated compensation only after accounting for an employee's obligations rather than just his or her spatial position. *See* N.J. Admin. Code § 12:56-5.6(a) (providing that "on-call" employees "who are not required to remain on the employer's premises" shall not be compensated if they "are free to engage in their own pursuits").

Second, while a literal interpretation of § 12:56-5.2(a) could result in a test that requires compensation any time an employee is required to be on the employer's physical premises—independent of whether that employee is actually required to perform any job-related duties—the Court predicts that the New Jersey Supreme Court would not adopt such a bright-line approach. *See Matter of Adoption of N.J.A.C. 7:1l*, 693 A.2d 97, 102-05 (N.J. 1997) (rejecting "literal" reading of statute when it conflicted with legislative intent, which is presumed to be "consonant to reason and good discretion" (first quoting *Schierstead v. Brigantine*, 148 A.2d 591, 596 (N.J. 1959) ("[S]tatutes are to be read sensibly rather than literally[.]"); then quoting *Guiseppi v. Walling*, 144 F.2d 608, 624 (2d Cir.1944) (Hand, J., concurring) ("There is no surer way to misread any document than to read it literally."))). Indeed, a literal interpretation would require small business owners to compensate their employees during their lunch break even if the employees were entirely free to engage in their own pursuits because the circumstances of the job site made it too difficult, as a practical matter, to leave during the lunch break. When presented with this scenario at oral argument, Plaintiff was unable to address it. (*See* ECF No. 38 at 19 ("[W]e're not asking the Court to rule on painters or small business [or] any other example other than that we believe [P]laintiff has alleged[.]").)

Instead, the Court predicts that the New Jersey Supreme Court would adopt a more flexible test that considers whether employees are required to perform job-related duties and whether they are free to engage in their own pursuits during a lunch break. And, the Court predicts the New

Jersey Supreme Court would turn to the FLSA's predominant benefit test for guidance. *Vaccaro* I, 2020 WL 3496973, at *4, *6; *see also Babcock*, 806 F.3d at 156 (noting courts "have generally eschewed a literal reading of a [United States] Department of Labor regulation" which states that "an office employee who is required to eat at his desk" must be compensated and have instead "assessed the totality of the circumstances to determine, on a case-by-case basis, to whom the benefit of the meal period inures." (quoting 29 C.F.R. § 785.19(a)). Under that test, an employer is required to compensate an employee if the employee is engaging in "(1) an activity . . . that is *controlled or required* by the employer; and (2) such activity serves to *primarily benefit* the employer." *Vaccaro* I, 2020 WL 3496973, *4 (emphasis in original). In *Babcock*, the Third Circuit only focused on this second prong while articulating the test. *See Babcock*, 806 F.3d at 156 (analyzing "to whom the benefit of the meal period inures").

Regardless of whether the test is one- or two-pronged, the Court holds that Plaintiff has failed to allege a meal break claim because she has failed to plead the second prong. Plaintiff has alleged no facts rendering it plausible that Defendant affords its employees meal breaks predominantly for its own benefit. (*See generally* ECF No. 1-1.) Even accepting all of Plaintiff's allegations as true, the Court does not "find that [Plaintiff was] primarily engaged in work-related duties during" her lunch break. *Babcock*, 806 F.3d at 158. Instead, the Court concludes that, as alleged, Plaintiff "receive[s] the predominant benefit of the time in question and [is] not entitled to compensation for it under" the NJWHL. *Id*. Accordingly, Defendant's Motion to Dismiss is granted without prejudice with respect to the meal break claim.

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, Defendant's Motion to Dismiss (ECF No. 12) is **GRANTED in part** and **DENIED in part**. An appropriate Order follows.

Dated: August 24, 2026

Georgette Castner
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**